UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKEY H. WILLIAMS,

       Plaintiff,                         CIVIL ACTION NO. 10-14149

       v.                               DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF                  MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.**       **PROCEDURAL HISTORY**

      *A.*      *Proceedings in this Court*

On October 15, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on Plaintiff's motion to remand and Defendant's motion for summary judgment (Dkt. Nos. 13, 16). Plaintiff also filed a reply brief (Dkt. No. 17) in support of his request that this matter be remanded.

      *B.*      *Administrative Proceedings*

Plaintiff filed the instant claims on February 21, 2008, alleging that he became unable to work on January 14, 2008 (Tr. 11, 111-121). The claim was initially disapproved by the

Commissioner on April 14, 2008 (Tr. 11, 56-63). Plaintiff requested a hearing and on November 16, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Jose Anglada, who considered the case *de novo*. In a decision dated January 21, 2010, the ALJ found that Plaintiff was not disabled (Tr. 8-20). Plaintiff requested a review of this decision on April 27, 2010 (Tr. 6-7). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-10E, Tr. 219-223), the Appeals Council, on August 26, 2010, denied Plaintiff's request for review (Tr. 1-5).

In light of the entire record in this case, I find that the ALJ failed to give controlling weight to medical evaluations by Plaintiff's treating physician or to adequately explain his reasons for such action. Therefore, it is **RECOMMENDED** that Plaintiff's motion to remand be **GRANTED**, that Defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for further proceedings consistent with the discussion below.

II.     STATEMENT OF FACTS

   A.     *ALJ Findings*

Plaintiff was 45 years old at the time of the administrative hearing. Plaintiff has past relevant work as a machine operator (Tr. 16). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 14, 2008 (Tr. 13). At step two, the ALJ found that Plaintiff had the following "severe" impairments: chronic obstructive pulmonary disease, discogenic degenerative

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

disorder of the back and a history of bilateral carpal tunnel syndrome. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 14) Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "less than the full range of light work..... [Plaintiff] can carry/lift a maximum of 20 pounds and sit/stand/walk a total of up to six hours in an eight hour workday. He can occasionally climb ladders and stairs, bend, crawl, squat or crouch. He is unable to engage in work requiring constant handling and fingering and should avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, extreme temperatures and humid environments" (Tr. 14). At step four, the ALJ found that Plaintiff could perform his previous work as a machine operator (Tr. 16). Thus, the ALJ concluded that Plaintiff was not disabled, and terminated Plaintiff's case at step four and did not proceed to step five of the analysis.

  **B.**  *Administrative Record*

    **1. Medical Evidence - Physical**

In January 2007, orthopedist Dr. Flood examined Plaintiff and diagnosed him with cervical spondylosis with discogenic neck pain (Tr. 232). Dr. Flood recommended physical therapy for Plaintiff's cervical spine and pain medications (Tr. 232). He did not believe surgery was indicated, although he thought Plaintiff might be a candidate for injections if the neck pain continued (Tr. 232).

Plaintiff's muscle strength, neck, and neurological examination were normal in July 2007 (Tr. 263, 267). In August 2007, Dr. Huhnert, a pain specialist, evaluated Plaintiff's neck pain (Tr. 224-25). Plaintiff complained of pain during part of the clinical examination, but exhibited 5/5 muscle strength in both arms (Tr. 224-25). Dr. Huhnert started Plaintiff on Medro Dosepak

and anti-inflammatory medication and instructed Plaintiff to return to his clinic in two weeks to decide if cervical facet injections were appropriate (Tr. 225).

Plaintiff complained of neck, back, or joint pain to various health providers between October 2007 and March 2008 (Tr. 249, 255, 288-89, 290-92, 297, 302, 305, 317). During examinations in February 2008, Plaintiff exhibited 5/5 muscle strength, no neurological deficits, and no effusion or tenderness (Tr. 249, 255, 288-89, 306).

In March 2008, Plaintiff reported in his disability paperwork that he could lift about 25 pounds and that he fed his cat, cleaned and did laundry on good days, played cards on-line, and pushed a cart at the grocery store (Tr. 190-95).

In April 2008, state agency physician Dr. Digby reviewed the medical evidence and opined that Plaintiff was capable of performing light work, except that he could only occasionally engage in postural activities and should avoid concentrated exposure to environmental hazards (Tr. 326-29). Dr. Digby opined that Plaintiff's statements were partially credible, noting that despite Plaintiff's diagnosis of cervical facet syndrome, he had normal strength and sensation in his extremities, and no joint effusion or tenderness (Tr. 330).

In May 2008, Plaintiff complained to primary care physician Dr. Blakeney of daily neck pain (Tr. 411). Plaintiff underwent a clinical and electrodiagnostic evaluation with Dr. O'Connor in May 2008, reporting neck pain that radiated to his left arm (Tr. 461). Plaintiff had a clinically normal neuromuscular examination with some restrictions in neck mobility, exhibiting 5/5 muscle strength in both shoulders and elbows, normal reflexes, a negative Spurling's test, and a negative Hoffman's sign (Tr. 461-462). The electrodiagnostic study was essentially normal with most likely only a normal variant, not related to any neuromuscular disease or compression (Tr. 462). Dr. O'Connor suggested treatment with manual medicine (massage therapy) (Tr. 462).

In June 2008, Plaintiff reported that he experienced shoulder pain radiating from his neck, but was not sure he wanted injections (Tr. 409). He reported that his pain control was "adequate" (Tr. 409). The following month, Plaintiff visited Dr. Rowan for an osteopathic manipulative medicine evaluation regarding his upper back, neck, and shoulder pain (Tr. 450). Plaintiff's Spurling's test was negative, and he exhibited 5/5 muscle strength but some range of motion limitations (Tr. 452). Dr. Rowan recommended follow-up in one to two weeks, but the record does not reflect that Plaintiff returned to Dr. Rowan for treatment (Tr. 453).

In August 2008, Plaintiff reported to Dr. Blakeney that his neck pain was "about the same" except that it was worse after a 2000-mile road trip (Tr. 405). Plaintiff continued to report neck pain to Dr. Blakeney through March 2009 (Tr. 400, 404-08).

In April 2009, Plaintiff had a neurosurgery consultation with Dr. Lara regarding a dragging foot (Tr. 351-55, 436). Dr. Lara reviewed Plaintiff's recent lumbar spine MRI, which she characterized as showing a "tiny left L 4/5 disk herniation" (Tr. 348, 437). Plaintiff exhibited 4+/5 strength in his affected foot (Tr. 438). Dr. Lara observed normal gait, muscle tone, and strength, and full, painless range of motion of all major muscle groups and joints (Tr. 437). Dr. Lara recommended physical therapy and electromyography (EMG) testing (Tr. 438).

Plaintiff attended physical therapy from May 7 to May 22, 2009 (Tr. 336-43). His physical therapist assessed his range of motion in his hips, knees, ankles, and trunk as within functional limits and his strength as between 4/5 to 5/5, except in his affected foot (Tr. 341, 336). He reported at two of his sessions that his leg pain was "not too bad today" (Tr. 338-39). At his May 22, 2009 session, his physical therapist noted that he was making good progress and that his strength and hamstring extensibility had improved (Tr. 336). Thereafter, Plaintiff failed to show at three consecutive appointments and was discharged from his physical therapy program

(Tr. 335).

Dr. Lara noted, at Plaintiff's May 2009 follow-up appointment, that Plaintiff's left leg issues were completely resolved (Tr. 433). Dr. Lara noted that Plaintiff had not complied with instructions to undergo an EMG and was "not willing to try injections," although he continued to complain of low back pain (Tr. 433). Physical examination indicated that Plaintiff's neck was "supple with full range of motion" (Tr. 434). He also exhibited full, painless range of motion in all major muscle groups and joints and 5/5 muscle strength throughout his legs during physical examination (Tr. 434).

Plaintiff again complained to Dr. Blakeney of neck pain in June and July 2009 and at this time exhibited decreased range of motion in his neck (Tr. 392, 395). In August 2009, Dr. Blakeney opined that Plaintiff had chronic neck and right arm pain that limited him to walking three blocks, lifting 10 pounds occasionally and 20 pounds rarely, sitting/standing 30 minutes without interruption, sitting about six hours and standing/walking about two hours in an eight hour workday, rarely performing postural activities, and significantly limiting reaching, handling, and fingering (Tr. 491-94). Dr. Blakeney also opined that Plaintiff would be absent from work more than 4 times per month, due to his impairments (Tr. 494).

### 2. Medical Evidence - Mental

In early 2009, Plaintiff reported anxiety related to his father's battle with cancer (Tr. 399, 401, 413). Plaintiff also sought counseling from January through June 2009 from Trinity Counseling Services regarding marital difficulties (Tr. 618). During the course of counseling, Plaintiff's GAF improved from 50 to 65, and he completed his goals with respect to coping skills and stress management (Tr. 618).

Treatment records from July 2007 to September 2009 typically reflected that Plaintiff's

mood and affect were normal (Tr. 249, 263, 296, 302, 306, 356, 375, 396, 400, 404, 406, 408, 440, 539). Dr. Rowan recommended medication for depression in July 2008 (Tr. 453). Plaintiff reported no depression in February and March 2008 and April and September 2009 (Tr. 302, 305, 436, 533).

### C. Plaintiff's Claims of Error

Plaintiff raises three issues on appeal, namely: (1) whether the Commissioner failed to recognize all of the severe impairments Plaintiff suffers from; (2) whether the ALJ improperly rejected the opinion of Plaintiff's treating physician; and (3) whether the ALJ failed to properly evaluate Plaintiff's credibility.

## III. DISCUSSION

### A. Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.)

and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

>claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

    C.    *Analysis and Conclusions*

As noted earlier, Plaintiff raises three arguments on appeal: (1) that the ALJ failed to recognize all of Plaintiff's "severe impairments" at step two (specifically, that the ALJ failed to consider Plaintiff's alleged depression, anxiety and cervical facet syndrome as "severe impairments"); (2) that the ALJ improperly rejected the opinions of Plaintiff's treating physician; and (3) that the ALJ's RFC failed to properly weigh Plaintiff's credibility.

    **1. The ALJ Did Not Err At Step Two**

Plaintiff first argues that the ALJ erred in not recognizing Plaintiff's depression, anxiety and cervical facet syndrome as "severe impairments" at step two of the analysis. Plaintiff's first argument is not well taken, as it is unnecessary to decide such a question when the ALJ

proceeded past step two and later fully evaluates Plaintiff's appropriate residual functional capacity. *See Maziarz v. Sec. of HHS*, 837 F.2d 240, 244 (6th Cir.1987). Step two functions to decide whether to stop the analysis at that step, or move forward in the sequential evaluation process. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (step two is satisfied if the claimant has "any medical determinable physical or mental impairment"). Here, the ALJ determined that Plaintiff had severe impairments of chronic obstructive pulmonary disease, discogenic degenerative disorder of the back and history of bilateral carpel tunnel syndrome and then moved on to step three of the analysis. Thus, there was no error by the ALJ at step two. Furthermore, the ALJ specifically acknowledged Plaintiff's depression and anxiety, noting that Plaintiff "participated in mental health counseling, but his appointments were limited and he was only treated for a short period of time" (Tr. 14). Finally, the ALJ's recognition of a "discogenic degenerative disorder of the back" as a severe impairment at step two seems to encompass Plaintiff's cervical facet syndrome.

### 2. The ALJ Improperly Rejected The Opinion Of Plaintiff's Treating Physician

Plaintiff next argues that the ALJ did not appropriately weigh Dr. Blakeney's opinion or discuss all of the factors in 20 C.F.R. § 404.1527(d) in determining how much weight to accord her opinion (Pl.'s Br. at 7-9). Here, the ALJ declined to accord controlling weight to Dr. Blakeney's opinion, stating simply that Dr. Blakeney's opinion was "inconsistent with the medical evidence as a whole" (Tr. 16). Plaintiff's second argument is well-taken.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the so-called "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009). The rationale behind the rule is that:

> treating physicians are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). The ALJ must give a treating source opinion "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Ibid*. Even if the ALJ does not give controlling weight to a treating physician's opinion, he or she must still consider how much weight to give it; in doing so, the ALJ must take into account the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by "good reasons" that are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. This procedural "good reason" rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of his case. *Rogers*, 486 F.3d at 242.

The Sixth Circuit has made it clear that a court should reverse and remand a denial of benefits, even though "substantial evidence otherwise supports the decision of the Commissioner," when the ALJ fails to give good reasons for discounting the opinion of the

-13-

claimant's treating physician. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004). A failure to follow the procedural requirement "of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243; *see also Wilson* at 546 (a reviewing court "cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record of the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely"). Thus, while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be "sufficiently specific" to meet the goals of the "good reason" rule.

*Wilson* also observed that, in some circumstances, a violation of the rule might be "harmless error" if (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation." *Id.* at 547. In the last of these circumstances, the procedural protections at the heart of the rule may be met when the "supportability" of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked through an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 Fed.Appx. 456, 464 (6th Cir. 2006).

Applying the above framework to this case, I find that the ALJ committed error with respect to his treatment of the opinion of Dr. Blakeney. The ALJ's rationale for discounting Dr. Blakeney's opinion was expressed simply as the opinion was "inconsistent with the medical evidence as a whole" (Tr. 16). This is not "sufficiently specific" to meet the requirements of the rule on its face, inasmuch as it neither identifies the "objective clinical findings" at issue nor discusses their inconsistency with Dr. Blakeney's opinion. Moreover, even when an ALJ correctly reaches a determination that a treating source's medical opinion is inconsistent with the other substantial evidence in the record, such a determination "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4). Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* Put simply, it is not enough to dismiss a treating physician's opinion as "incompatible" with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick. Accordingly, I recommend that this matter be remanded for a new hearing to address this procedural defect.

### 3. Credibility Analysis

Plaintiff's third, and final, argument on appeal is that the ALJ failed to properly analyze Plaintiff's credibility. This argument is also well-taken. The ALJ is required to give specific reasons for his findings regarding an individual's credibility pursuant to SSR 96–7p:

> [T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding of credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have

-15-

> been considered" or that "the allegations are (or are not) credible." (citation omitted.)
>
> * * *
>
> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Moreover, the Social Security Administration ("SSA") has guidelines regarding analyzing a Plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; *see also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994). Pursuant to the SSA regulations, the ALJ must analyze: 1) the Plaintiff's daily activities; 2) the location, duration, frequency and intensity of pain; 3) Precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, Plaintiff receives or received for relief of pain; and 6) any measures Plaintiff uses or has used to relive pain. *See* 20 C.F.R. § 404 .1529(c)(2); *Felisky*, 35 F.3d, at 1039–40.

Here, I find that the ALJ failed to properly evaluate an opinion from one of Plaintiff's treating physicians as it relates to Plaintiff's subjective complaints of pain. Accordingly, the Court has no way of determining whether proper consideration was given to the relevant factors in deciding how to weigh Plaintiff's credibility. There are several reasons why that failure is problematic in this case. First, the evaluation and treatment provided by Dr. Blakeney is part of the "objective medical evidence" the ALJ must consider when assessing the intensity and persistence of Plaintiff's pain symptoms. Second, it is undisputed that Dr. Blakeney is a treating physician who opined that Plaintiff is unable to maintain competitive employment. As the ALJ noted, Dr. Blakeley's opinion conflicts with other evidence in the record, including the opinion of the State agency physician, which the ALJ relied heavily upon. However, the ALJ is required

to give reasons for disregarding the opinion of Plaintiff's treating source which, as discussed above, the ALJ did not do. As such, I find that the ALJ's credibility determination is likewise flawed. In sum, I find that an incomplete analysis of the material evidence presented to the ALJ requires that Plaintiff's case be reconsidered.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for remand be **GRANTED** that Defendant's motion for summary judgment be **DENIED** and that this matter be remanded for a new hearing consistent with the discussion above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: November 4, 2011

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, November 4, 2011, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5542